[No. 610-3.   Division Three.   December 4, 1972.]

THE STATE OF WASHINGTON, *Appellant*, v. EVERETT DALE CASEY, *Respondent*.

*Lincoln E. Shropshire, Prosecuting Attorney, Gary G. McGlothlen, Deputy,* and *Warren L. Dewar, Jr.* (of *Velikanje, Moore, Countryman & Shore*), for appellant.

*Perry J. Robinson,* for respondent.

GREEN, J.—The State of Washington, on the complaint of Karen Stinehart, brought a filiation proceeding against the defendant, Everett Dale Casey, to establish the paternity of her child born out of wedlock. At the conclusion of the evidence, the trial court ruled against the defendant who appeared pro se. Thereafter, before findings of fact, conclusions of law and judgment were entered, the defendant obtained counsel who successfully secured an order granting a new trial. This is an appeal from that order.

Two questions are presented: (1) Can an unwed mother appeal in a filiation proceeding initiated by the prosecuting attorney on her complaint under RCW 26.24, where the prosecuting attorney fails to timely do so, and (2) Where reasons of law and fact supporting an order granting a new trial are apparent from the record and are not stated in the order as required by CR 59(f), is reversal required?[1]

On December 9, 1970, after a hearing, the trial judge made a minute entry noting a finding of paternity against the defendant, directing payment of certain support monies and of hospital and doctor bills, and directing that findings be prepared and presented. Thereafter, defendant obtained counsel and moved for dismissal, or in the alternative, for a new trial. In support of this motion, he filed affidavits of two men who stated they had each engaged in sexual intercourse with the complainant during April and May 1968, the general period of conception. These affidavits contradicted complainant's testimony at a preliminary hearing before a justice of the peace and later in superior court where she said that between March 1968 and the time she became pregnant in May 1968, she had not engaged in sexual intercourse with anyone other than the

---

[1]These questions are presented to us on the clerk's transcript of the record without benefit of a statement of facts.

defendant. The substance of this testimony was alluded to in the affidavit entitled "Affidavit Re: Perjury of Karen Stinehart" filed by the deputy prosecuting attorney who represented complainant during the filiation proceeding. His affidavit disclosed that at his request the complainant took a polygraph test which revealed she had not testified truthfully; and further, after the polygraph test was administered she gave a written statement that she had intercourse not only with the defendant, but with another and possibly two other men during the period of conception.

Based upon this record, on January 19, 1971, the same day the affidavit of the deputy prosecuting attorney was filed, the superior court judge who heard the filiation proceeding cited her for contempt of court and issued a bench warrant for her arrest. Thereafter, an additional affidavit was filed by the officer who administered the polygraph test stating the complainant admitted to him that she had not testified truthfully in court because she had engaged in sexual intercourse with a man other than defendant during the months of March and April 1968.

On September 17, 1971, the superior court judge who presided over the filiation proceeding heard the contempt proceeding as well as defendant's motion to dismiss or, in the alternative, for a new trial. On October 8, 1971, orders were entered dismissing the contempt citation and granting defendant's motion for a new trial. Thereafter, on November 8, 1971, the complainant through her personal attorney filed a notice of appeal from the order granting a new trial. It was not until November 18, 1971 that the deputy prosecuting attorney filed a similar notice of appeal.

Defendant has moved the court to dismiss this appeal upon the ground that complainant does not have an appealable interest and that the state's notice of appeal was not timely filed, *i.e.*, within 30 days, under CAROA 33. Whether the complainant in a filiation proceeding under RCW 26.24 has an appealable interest is a question of first impression in this state. *Bastardy Proceedings—Appeal By Mother*, Annot., 18 A.L.R.2d 948 (1951), states:

Some courts have held that the mother may not appeal since she is not an interested or aggrieved party under statutes giving such persons a right of appeal, but in most jurisdictions the mother may appeal under authority explicitly granted by statute or as an aggrieved party under a general statute.

In our state an unmarried woman who has a child that is not the issue of lawful wedlock may file a complaint in writing, accusing a person of being the father of such child. RCW 26.24.010.[2] Such proceeding is civil in nature. *State v. Mottet*, 73 Wn.2d 114, 437 P.2d 187 (1968). Thereafter, the accused and the complainant appear before a justice of the peace who makes a determination as to whether or not there appears to be sufficient cause to support the complaint; if sufficient cause exists, a bond is set for the accused and when it has been posted the justice of the peace transmits the bond together with a transcript of proceedings and the complaint to the clerk of the superior court. RCW 26.24.020. The proceeding shall be entitled in the name of the State of Washington and be prosecuted in both the justice court and the superior court by the prosecuting attorney of the county where it is filed. RCW 26.24.030. If the accused is found to be the father of the child, then the court shall enter judgment ordering support, RCW 26.24.090, and monies paid to the clerk pursuant to the judgment shall be paid to the mother of the child or in such other manner as may be directed. RCW 26.24.130. All of these procedures were followed in the instant case except that findings and judgment were never entered because of the defendant's motion for a new trial and the events that thereafter ensued.

■ It is evident that in a filiation proceeding the real parties in interest are the mother and her child who seek a determination of paternity and to establish the father's obligation for support. Without that determination, the complainant mother would be obligated to bear the total costs of support, together with the hospital and doctor bills at-

---

[2]Pursuant to this statute, the complainant signed the complaint accusing defendant in the instant case.

tendant upon the birth of the child. It cannot be denied that the complainant has a definite personal financial interest in the order and judgment entered in a filiation proceeding.

Generally, an aggrieved party has a right of appeal from an order granting a new trial. CAROA 14. A party is said to be an aggrieved party if he has a direct pecuniary interest that will be affected by the final judgment or order. *In re Avery,* 117 Conn. 201, 167 A. 544, 88 A.L.R. 1154 (1933); *Hartford Nat'l Bank & Trust Co. v. Malcolm-Smith,* 129 Conn. 67, 26 A.2d 234, 140 A.L.R. 805 (1942); 4 C.J.S. *Appeal & Error* § 177 (1957). In *State v. Sax,* 231 Minn. 1, 42 N.W.2d 680, 18 A.L.R.2d 929 (1950), the Minnesota court upheld the mother's right of appeal in a filiation proceeding on the basis that the unwed mother was an aggrieved party because she had a definite personal financial interest in the amount of the award for support, a right to recover expenses incident to the birth of the child, and was the natural guardian of the child. *See also* 10 C.J.S. *Bastards* § 129 (1938). We adopt this view.

The necessity for this result is pointed up more sharply in the instant case than in the Minnesota decision. Here, the deputy prosecuting attorney who had been representing the complainant in the filiation proceeding, subsequent to the trial court's oral ruling, caused a citation of contempt to issue against her. At that point, his interest became adverse to the complainant and he could no longer carry out the duty imposed upon him to represent her under RCW 26.24.030. The conflict of interest became even more apparent when a notice of appeal from the order granting new trial was not filed by the deputy prosecuting attorney until 10 days after the time for appeal had expired. Had it not been for the complainant's action in securing her own counsel to file a notice in the name of the state on the last day allowed under CAROA 33, all right to appeal would have been lost. Considering all of the circumstances, the complainant is an aggrieved party and should not be denied the right of appeal.

The fact that the action must be brought in the name of the State of Washington, RCW 26.24.030, rather than in the name of the complainant, does not detract from this conclusion. While the action under RCW 26.24 in the name of the State of Washington protects the state's interest in the support of the child, it does not remove the mother from the role of the real party in interest to the proceeding and hence the aggrieved party. Thus, the motion to dismiss the appeal is denied.

It is urged that the order for new trial should be reversed because the trial court in its order failed to state any definite reasons of law or facts as required by CR 59(f):

> In all cases where the trial court grants a motion for a new trial, it shall, in the order granting the motion, state whether the order is based upon the record or upon facts and circumstances outside the record which cannot be made a part thereof. If the order is based upon the record, the court shall give definite reasons of law and facts for its order. If the order is based upon matters outside the record, the court shall state the facts and circumstances upon which it relied.[3]

It is pointed out that in *Christy v. Davis,* 71 Wn.2d 81, 426 P.2d 493 (1967), the court, in reversing an order granting a new trial said:

> Because reasons "of law and facts" were not stated in the order granting a new trial in this case, the order and judgment granting a new trial is reversed and the case remanded for the entry of a judgment upon the verdict.

In reaching that result, the court quoted from *Durkan v. Leicester,* 62 Wn.2d 77, 81, 381 P.2d 127 (1963), wherein the court said:

> Although scholars have been critical of the implications arising from too rigid an adherence by courts of review to the rule requiring a statement of reasons, *i.e.,* facts, incidents, circumstances, occurrences (see Traut-

---

[3]Lawyers should exercise caution in preparing their orders for new trial to be sure they comply with CR 59(f), and trial judges should exercise similar caution when signing such orders. If such care is exercised, issues such as this one would not arise on appeal.

man, New Trials for Failure of Substantial Justice, 37 Wash. L. Rev. 367 (1962)), we think it is a sound one. By means of this rule, it is hoped that objective criteria will take the place of subjective impressions, and we adhere to it, notwithstanding our respect for the learning and broad experience of the trial judges who sometimes find it difficult to apply.

However, before applying this rule and reversing the order granting a new trial, the court in *Bjork v. Bjork,* 71 Wn.2d 510, 429 P.2d 234 (1967), reviewed the record and said:

> The record of the 4-day trial which culminated in the order modifying the decree fully supports the trial judge's conclusion that respondent was not a fit and proper person to have the custody of the children.

Even in *Durkan v. Leicester, supra,* after using the strict language quoted above, the court said at page 81:

> The record of trial here discloses substantial evidence from which the jury could have found the impact between the two cars ranged from slight to moderate in degree, and the personal injuries ranged from trifling headaches for a period of 4 days to those severe enough to materially affect respondent's auditory system. Nothing in the record of trial or recitation of the court's conclusions as to the inadequacy of the verdict permits us to invade the province of the jury by affirming the annulment of its verdict.

Again in *Johnson v. Marshall Field & Co.,* 78 Wn.2d 609, 611, 478 P.2d 735 (1970), the court avoided the strict language of CR 59(f) when it said:

> While the order of October 24, 1967, which granted the defendants a new trial on the second cause of action did not specifically state whether the order was based "upon the record or upon facts and circumstances outside the record which cannot be made a part thereof", as required by CR 59(f), the record otherwise indicates that it was based upon matters in the record. We treat it accordingly and find that the assignment of error has merit.

As in *Johnson v. Marshall Field & Co., supra,* we cannot ignore facts appearing in the record that make evi-

dent the motion was granted by reason of the apparent false testimony of the complainant. Rules of court, as indeed rules of law, are instruments in aid of justice and should not be used to thwart it. We believe the strict application of CR 59(f) in the circumstances of the instant case would convert the rule into a sword, rather than an aid, and work a clear distortion of justice. This we cannot and should not do.

The order granting new trial is affirmed.

MUNSON, C.J., and EDGERTON, J., concur.

Petition for rehearing denied January 15, 1973.

Review denied by Supreme Court March 6, 1973.